**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISON**

| | |
|---|---|
| PATRICIA M. RODRIGUEZ, | CASE NO. 1:21-CV-00752-JG |
| Plaintiff, | JUDGE JAMES GWIN |
| | UNITED STATES DISTRICT JUDGE |
| v. | |
| | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | CARMEN E. HENDERSON |
| Defendant, | **REPORT AND RECOMMENDATION** |

## I.      Introduction

Plaintiff, Patricia Rodriguez, seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

## II.      Procedural History

On June 5, 2018, Rodriguez filed applications for DIB and SSI, alleging a disability onset date of June 21, 2017. (ECF No. 11, PageID #: 225). The applications were denied initially and upon reconsideration, and Rodriguez requested a hearing before an administrative law judge ("ALJ").  (ECF No. 11, PageID #: 281). On September 27, 2019, an ALJ held a hearing, during which Rodriguez, represented by counsel, and an impartial vocational expert testified. (ECF No.

11, PageID #: 87). On November 5, 2019, the ALJ issue    d a written decision finding Rodriguez

was not disabled. (ECF No. 11, PageID #: 222). The ALJ's decision became final on February 3,

2021, when the Appeals Council declined further review.  (ECF No. 11, PageID #: 65).

On April 7, 2021, Rodriguez filed her Complaint to challenge the Commissioner's final

decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 15, 18, 20).

Rodriguez asserts the following assignment of error:

> The ALJ's RFC determination is not supported by substantial
> evidence and the product of legal error because she failed to
> properly evaluate the opinion of long time primary care physician,
> William E. Crowe, M.D.

(ECF No. 15 at 3).

## III.    Background

### A.        Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Rodriguez's hearing:

> The claimant testified that she is disabled due to lupus, migraines,
> sleeping problems, low energy, difficulty walking, and difficulty
> performing daily activities; she has 10-15 migraines per month and
> must go to the emergency department for them "nine times out of
> ten"; she clarified that she will get them 5 times a month when she
> lets them go 3-4 days before she gets treatment; the migraines can
> last from 3-4 days before she goes to get treatment; she later
> testified that she gets a headache once every other week; when she
> has lupus flare-ups monthly; the flare-ups vary in duration from
> weeks to a month; during the flare-ups has joint and body pain
> throughout, difficulty breathing, and swelling; she has constant low
> back pain at a 6-7 out of 10 on the pain scale; she uses pain meds,
> ice packs, and heating pads; she also has fibromyalgia and
> rheumatoid arthritis; she has issues with fumes/odors from bleach
> and fuels; she performs dusting once per month; she tries to do
> laundry once per week; there is not much to do in her residence
> because she lives alone; she did not always use her CPAP
> machine; a friend comes to take her shopping; she is able to
> prepare basic meals; she is able to walk 50 to 100 feet before she
> gets short of breath; she gets swelling in her hands and feet; her
> fingers lock up; depression makes her not want to do things; and

2

she has issues with focusing. (Testimony).

(ECF No. 11, PageID #: 239).

**B.**      **Relevant Medical Evidence[1]**

The ALJ also summarized Rodriguez's health records and symptoms:

> The record supports that the claimant has experienced functional limitations related to spine disorders, system lupus erythematosus, fibromyalgia, migraine, osteoarthritis and allied disorders, chronic respiratory disorders, trauma and stressor-related disorders, depressive disorders, and anxiety disorders.
>
> MRI of the claimant's brain dated September 7, 2017, was unremarkable. (B2F/20-22). An EEG dated October 11, 2017, was within normal limits, with no evidence of epileptiform discharges. (B2F/24-25). The record supports that the claimant received treatment in the emergency department for headaches on July 22, 2018 (B5F/272), April 17, 2019 (B12F/67), June 1, 2019 (B12F/54), and June 19, 2019 (B12F/5). On October 17, 2018, she reported two headaches per week and slight improvement with medication. (B10F/11). The claimant denied headaches at exams on June 29, 2017 (B5F/257), October 6, 2017 (B6F/21), November 22, 2017 (B5F/267), and December 5, 2017 (B4F/24).
>
> The claimant received emergency treatment for pulmonary embolisms on June 20, 2017. (B5F/226-231). The claimant presented to the emergency department on June 29, 2017, with allegations of shortness of breath on exertion. (B5F/255). On exam, she had no cough, wheezing, or shortness of breath, and she was physically otherwise unremarkable throughout. (B5F/257). Imaging of the claimant's lungs dated November 23, 2018, was unremarkable. (B11F/3). The record supports that the claimant has obstructive sleep apnea, treated with CPAP. (B12F/114).
>
> An EMG of the claimant's left upper and lower extremities dated July 2, 2019, showed evidence of "very mild left median neuropathy at the wrist (carpal tunnel syndrome) without active denervation, and "no evidence of peripheral neuropathy." (B12F/4).

---

[1]  Because Rodriguez's sole argument involves only her physical impairments, the Court does not discuss the record of Rodriguez's mental impairments.

3

At podiatric exam on July 6, 2017, she was grossly intact neurologically, with no sensory deficits in the feet; and her gait was normal. (B1F/7). At exam on August 2, 2017, she had no increased work for breathing or signs of respiratory distress; her lungs were clear; her skin was unremarkable; and she was psychiatrically unremarkable throughout, with normal judgment and insight and she was fully oriented. (B1F/12).

 At exam on August 22, 2017, she had no temporal artery tenderness; Tinel sign was negative; her pulses were intact in all extremities; her cranial nerves were intact; her motor exam was normal; her muscle strength was 5/5 in distal and proximal extremities; her muscle tone was normal in the upper and lower extremities bilaterally; her reflexes were normal in the upper and lower extremities; her sensory exam was normal to light touch, sharp/dull, vibration sense, and position sense, in the upper and lower extremities bilaterally; her coordination was normal with respect to finger-to-nose and heel-to-shin testing; her rapid alternating movements were intact in the upper and lower extremities bilaterally; her gait was normal and stable; and Romberg signs were negative. (B2F/8-9). The claimant demonstrated substantially similar examination findings at detailed neurological exams on October 26, 2017 (B2F/16), October 17, 2018 (B10F/15-16), December 13, 2018 (B10F/8), April 8, 2019 (B11F/19), June 6, 2019 (B11F/10-11), and August 14, 2019 (B15F/10-11).

At exam on December 5, 2017, she was unremarkable physically, including no respiratory distress, no edema, no focal deficits, and grossly intact motor strength. (B4F/24). At exam on July 28, 2018, she had normal range of motion and muscle strength throughout; her lungs were clear; her respirations were non-labored; and she had some abdominal tenderness. (B6F/74). At exam on July 3, 2019, her breathing effort and sounds were unremarkable; and she was otherwise physically unremarkable throughout. (B13F/7).

(ECF No. 11, PageID #: 240–41).

## C.  Opinion Evidence at Issue

### 1.  State Agency Medical Consultants

State Agency medical consultants David Knierim, M.D., and Gerald Kylop, M.D., reviewed the medical record regarding Rodriguez's physical impairments. Both consultants

4

opined that Rodriguez is limited to light work except that she can frequently climb ramps or stairs; never climb ladders, ropes, or scaffolds; frequently stoop; and occasionally kneel, crouch, and crawl. (ECF No 11, PageID #: 174). They additionally suggested that Rodriguez should have no concentrated exposure to fumes, odors, dusts, gases, and poor ventilation; and no more than frequent exposure to hazards such as unprotected heights and dangerous machinery. (ECF No. 11, PageID #: 175). The ALJ found these opinions persuasive because they were supported by and consistent with the evidence of record. (ECF No. 11, PageID #: 246–47).

**2.      Treating Physician—William E. Crowe, M.D.**

On September 11, 2019, Rodriguez's treating physician, Dr. Crowe, completed a physical medical source statement. (ECF No. 11, PageID #: 1355–57). Dr. Crowe opined that Rodriguez could sit for twenty to thirty minutes at a time, stand for five minutes at a time, sit for about four hours in a day, and walk for less than two hours in a day. (ECF No. 11, PageID #: 1355). He concluded that Rodriguez could occasionally lift less than ten pounds and rarely lift ten pounds. (ECF No. 11, PageID #: 1355). Dr. Crowe also noted that Rodriguez had significant limitations with reaching, handling, or fingering. (ECF No. 11, PageID #: 1356). Additionally, Dr. Crowe suggested that Rodriguez requires five-minute breaks once an hour due to muscle weakness, chronic fatigue, pain, and adverse effects of her medication. (ECF No. 11, PageID #: 1355). He similarly indicated that Rodriguez should take a two minute walk every thirty minutes. (ECF No. 11, PageID #: 1355). Dr. Crowe then noted that Rodriguez should elevate her legs at a ninety-degree angle anytime they were swollen—about 85% of the time. (ECF No. 11, PageID #: 1355–56). Overall, Dr. Crowe opined that Rodriguez would be off-task 25% or more of the time and would be absent more than four days per month. (ECF No. 11, PageID #: 1356–57). Finally, he suggested that, due to the stress of having a chronic illness and the effects of her medications,

Rodriguez was incapable of even low stress work. (ECF No. 11, PageID #: 1357). The ALJ concluded that this opinion is not persuasive "because it is inconsistent with the claimant's predominately unremarkable physical examination findings throughout." (ECF No. 11, PageID #: 248).

## IV.     The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 3. The claimant has the following severe impairments: spine disorders, system lupus erythematosus, fibromyalgia, migraine, osteoarthritis and allied disorders, chronic respiratory disorders, trauma and stressor-related disorders, depressive disorders, and anxiety disorders (20 CFR 404.1520(c) and 416.920(c)).

> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except frequently climb ramps or stairs; never climb ladders, ropes, or scaffolds; frequently stoop; occasionally kneel, crouch, and crawl; frequent exposure to fumes, odors, dusts, gases, and poor ventilation; frequent exposure to hazards such as unprotected heights and dangerous machinery; limited to performing simple, routine tasks, but not at a production rate pace; frequent interactions with co-workers and the public; and limited to occasional routine workplace changes.

(ECF No. 11, PageID #: 228–29, 238).

## V.     Law & Analysis

### A.         Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v.*

*Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient

evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

###    C.        Discussion

Rodriguez raises one issue on appeal. She argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to properly evaluate the opinion of her treating physician, Dr. Crowe.[2] At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. §§ 404.1520(e). On January 18, 2017, the Social Security Administration amended the rules for evaluating medical opinions for claims filed after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." C.F.R. § 404.1520c(a). Nevertheless, an ALJ must "articulate how [she] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. *Id.* In doing so, the ALJ is required to explain how she considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. *Id.* § 404.1520c(b)(2). Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the

---

[2] The "treating source rule," which generally required the ALJ to defer to the opinions of treating physicians, was abrogated by 20 C.F.R. § 404.1520c for claims filed on or after March 27, 2017, such as here.

source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." *Id.* §§ 404.1520c(c), 404. 1520c(b)(2) ("The factors of supportability [] and consistency [] are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions . . . .").

Dr. Crowe completed a physical medical source statement and opined as to the following. Rodriguez can sit for twenty to thirty minutes at a time, stand for five minutes at a time, sit for about four hours in a day, and walk for less than two hours in a day. (ECF No. 11, PageID #: 1355). Rodriguez can occasionally lift less than ten pounds and rarely lift ten pounds. (ECF No. 11, PageID #: 1355). Rodriguez has significant limitations with respect to reaching, handling, or fingering. (ECF No. 11, PageID #: 1356). Rodriguez requires five-minute breaks once an hour due to muscle weakness, chronic fatigue, pain, and adverse effects of her medication. (ECF No. 11, PageID #: 1355). She should take a two minute walk every thirty minutes. (ECF No. 11, PageID #: 1355). Rodriguez needs to elevate her legs at a ninety-degree angle anytime they are swollen—about 85% of the time. (ECF No. 11, PageID #: 1355–56). Overall, Rodriguez will be off-task 25% or more of the time and absent more than four days per month. (ECF No. 11, PageID #: 1356–57). Finally, due to the stress of having a chronic illness and the effects of her medications, Rodriguez is incapable of even low stress work. (ECF No. 11, PageID #: 1357).

The ALJ considered this opinion and gave the following explanation:

> I find this opinion unpersuasive because it is inconsistent with the claimant's predominantly unremarkable physical examination findings throughout.
>
> The claimant's physical examination findings of record do not support any significant deficits in strength, reflexes, coordination, muscle tone, pain findings, or gait, that would tend to support the doctor's opinions. At exam on August 2, 2017, she had no increased work for breathing or signs of respiratory distress; her lungs were clear; her skin was unremarkable; and she was

psychiatrically unremarkable throughout, with normal judgment and insight and she was fully oriented. (B1F/12). At exam on August 22, 2017, she had no temporal artery tenderness; Tinel signs were negative; her pulses were intact in all extremities; her cranial nerves were intact; her motor exam was normal; her muscle strength was 5/5 in distal and proximal extremities; her muscle tone was normal in the upper and lower extremities bilaterally; her reflexes were normal in the upper and lower extremities; her sensory exam was normal to light touch, sharp/dull, vibration sense, and position sense, in the upper and lower extremities bilaterally; her coordination was normal with respect to finger-to-nose and heel-to-shin testing; her rapid alternating movements were intact in the upper and lower extremities bilaterally; her gait was normal and stable; and Romberg signs were negative. (B2F/8-9). The claimant demonstrated substantially similar examination findings at detailed neurological exams on October 26, 2017 (B2F/16), October 17, 2018 (B10F/15-16), December 13, 2018 (B10F/8), April 8, 2019 (B11F/19), June 6, 2019 (B11F/10-11), and August 14, 2019 (B15F/10-11). At exam on December 5, 2017, she was unremarkable physically, including no respiratory distress, no edema, no focal deficits, and grossly intact motor strength. (B4F/24). At exam on July 28, 2018, she had normal range of motion and muscle strength throughout; her lungs were clear; her respirations were non-labored; and she had some abdominal tenderness. (B6F/74). At exam on July 3, 2019, her breathing effort and sounds were unremarkable; and she was otherwise physically unremarkable throughout. (B13F/7). These examination findings do not support any significant physical limitations with respect to standing, walking, lifting, reaching, handling, grasping, turning or fine finger manipulation, or a degree of physical limitation greater than that which is set forth in the above residual functional capacity finding.

Moreover, the doctor did not provide an explanation with documented support [for] his opinion regarding attendance and off-task behavior. The exam findings and predominantly unremarkable testing and imaging do not support the degree of limitation to which the doctor opined. The doctor's opinions are also inconsistent with the well-supported and persuasive opinions of the state agency medical consultants. (B3A/12-13; B5A/12-13; B7A/12-14). For these reasons and based on this evidence I find this opinion unpersuasive.

(ECF No. 11, PageID #: 248).

Despite this lengthy explanation, Rodriguez asserts that the ALJ erred in her analysis because she did not provide a logical bridge explaining how Dr. Crowe's limitations were inconsistent with the medical record. Had the ALJ done so, Rodriguez argues, the ALJ would have found the opinion consistent with her diagnoses of Lupus with arthritis, pulmonary emboli, pleurisy, and continuous possible postural orthostatic tachycardia syndrome and her symptoms of joint pain, morning stiffness, orthostatic dizziness, severe fatigue, and shortness of breath. (ECF No. 15 at 18). The Commissioner responds that Rodriguez's argument is unavailing. The Commissioner asserts that the ALJ thoroughly considered the medical record and noted findings that did not support Dr. Crowe's severe limitations. The Court agrees.

The ALJ concluded that findings of 5/5 muscle strength in distal and proximal extremities, normal muscle tone, normal reflexes in the upper and lower extremities, normal sensory exam in the upper and lower extremities bilaterally, normal coordination with respect to finger-to-nose and heel-to-shin testing, intact rapid alternating movements in the upper and lower extremities bilaterally, normal gate, and negative Romberg signs were inconsistent with significant physical limitations with respect to standing, walking, or lifting. Similarly, findings of negative Tinel signs, normal motor exam, and normal muscle strength were inconsistent with significant limitations with respect to reaching, handling, or fingering. These findings provide substantial evidence for the ALJ's consistency analysis.

Nonetheless, Rodriguez appears to argue that these findings are irrelevant because Dr. Crowe based his opinion on Lupus, pulmonary emboli, pleurisy, and possible POTS and symptoms of fatigue, shortness of breath, joint pain, headaches, and dizziness. She asserts that the ALJ discounted Dr. Crowe's opinion based on normal findings unrelated to these symptoms. However, this argument is also without merit because the ALJ explained both

11

within this section and elsewhere in the decision why she found that these symptoms did not lead to such severe limitations. As for shortness of breath, the ALJ stated "While the claimant has alleged issues related to breathing, her physical exams were predominantly unremarkable for deficits in breathing effort, signs of pulmonary distress, and wheezing. For example, at exam on August 22, 2017, her oxygen saturation was 98%." (ECF No. 16, PageID #: 242). With respect to headaches, the ALJ did not accept Rodriguez's subjective reports as they were undermined by considerable inconsistencies in the medical record. (ECF No. 16, PageID #: 243). Similarly, within a long discussion section, the ALJ stated that Rodriguez's subjective allegations "are not entirely consistent with [her] reported daily functioning, the examination findings of record, and the persuasive portions of the medical opinions." (ECF No. 11, PageID #: 244). Rodriguez does not dispute these conclusions. Thus, even if Rodriguez is correct that the normal findings the ALJ relied on are irrelevant to Dr. Crowe's opinion, the ALJ sufficiently explained why the symptoms Rodriguez claims Dr. Crowe relied on were inconsistent with and did not support Dr. Crowe's opinion. The objective medical evidence simply did not support such extreme limitations. Moreover, the ALJ also noted that Dr. Crowe's opinion was inconsistent with the State Agency opinions.

Additionally, the ALJ determined that Dr. Crowe's opinion was not supported by the medical record because he provided no support at all for his opinion that Rodriguez would be off-task 25% or more of the time and absent four days a month. The ALJ also reasoned that the normal exam findings and unremarkable testing discussed above did not support such extreme limitations. Rodriguez does not appear to dispute this conclusion. Thus, the ALJ clearly explained her conclusion that the opinion was not consistent with or supported by the medical record. The Court also concludes that the ALJ's RFC was supported by the lack of objective

12

medical evidence supporting Rodriguez's symptoms and the opinions of the State Agency examiners. Accordingly, the Court finds no reason to disturb the ALJ's decision.

## VI.    Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Rodriguez's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: June 24, 2022

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530–31 (6th Cir. 2019).